**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| GARY GARNER, | ) | CASE NO. 1:19-CV-02453-JPC |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE J. PHILIP CALABRESE |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN DOUGLAS FENDER, | ) | |
| | ) | MAGISTRATE JUDGE |
| Respondent, | ) | CARMEN E. HENDERSON |
| | ) | |

**REPORT & RECOMMENDATION**

I.      **Introduction**

Gary Garner ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is an Ohio prisoner who is currently serving an aggregate prison term of two life sentences without parole. (ECF No. 1, PageID #: 1). Petitioner asserts four grounds for relief. (ECF No. 1-2, PageID #: 17). Warden Douglas Fender ("Respondent") filed a return of writ on January 17, 2020. (ECF No. 4). Petitioner filed a traverse on April 15, 2020. (ECF No. 6).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Petitioner's petition and other case-dispositive motions. Because Petitioner has presented only procedurally defaulted and meritless claims, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

II.     **Relevant Factual Background**

1

The Ohio Court of Appeals for the Eighth Appellate District set forth the following facts[1]

on direct appeal:

> {¶ 3} Garner was named in a 24–count indictment in Cuyahoga C.P. No. CR–13–575481–A.1 Garner was charged with eight counts of rape, in violation of R.C. 2907.02(A)(1)(b) (Counts 1, 2, 5, 6, 13, 16, 19, and 22); nine counts of gross sexual imposition ("GSI"), in violation of R.C. 2907.05(A)(4) (Counts 3, 7, 9, 10, 11, 14, 17, 20, and 23); six counts of kidnapping in violation of R.C. 2905.01(A)(4) (Counts 4, 8, 15, 18, 21, and 24); and one count of intimidation of a victim of a crime, in violation of R.C. 2921.04(B)(1) (Count 12). With the exception of the intimidation of a victim charge, each count of the indictment carried a sexually violent predator specification. In addition, Counts 4, 5, 6, 8, 15, 18, 21, and 24 contained a sexual motivation specification. Garner's indictment stemmed from allegations that he engaged in inappropriate sexual conduct with three minor children: A.C., D.T., and D.G.
>
> {¶ 4} In January 2014, the matter proceeded to a jury trial where the following relevant facts were adduced.
>
> {¶ 5} During the time periods pertinent to this case, Garner lived with his girlfriend, Linda Harvey ("Harvey"), who is the paternal grandmother of D.T. and the mother of A.C.'s stepfather, Tyrone Harvey.
>
> {¶ 6} D.T.'s mother, Khaesha Brown, testified that D.T. had a good relationship with her grandmother and spent the night at Harvey's home on numerous weekends while Brown worked. Brown testified that in July 2012, she learned that D.T. confessed to Felicia Coles ("Coles"), D.T.'s maternal grandmother, that Garner had inappropriately "touched" her on multiple occasions. Brown stated that when she asked D.T. about the "touchings," D.T. was scared and nervous, but eventually stated that Garner would come to her bedroom in Harvey's home and "take the covers off of her and touch her." D.T. also told Brown that she once woke up on the couch with "her panties down to her ankles." According to Brown, D.T. estimates that "basically every time that she was over there, * * * he was touching her." Following this conversation, Brown prevented D.T. from visiting Harvey's home and took D.T. to the hospital for

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

examination. Brown testified that the medical examinations did not reveal any signs of abuse.

{¶ 7} D.T. (DOB 7–14–2002), was 11 years old at the time of trial. She testified that Garner "touched" her when she was in the third and fourth grades, which encompassed the school years 2011–2012 and 2012–2013. These "touchings" took place when D.T.'s mother would drop her off at Harvey's home. D.T. testified that Garner touched her "chest" and her "private area in front" under her clothes with his fingers. D.T. clarified that Garner inserted his fingers inside her vagina on approximately one to five occasions. She further stated that Garner "touched [her] vaginal area without putting his fingers inside of [her]" more than five times but less than ten times. D.T. testified that the "touchings" usually took place in her bedroom but that on one occasion Garner touched her in the living room. D.T. stated that the sexual abuse stopped after she told Coles about what Garner had been doing to her.

{¶ 8} A.C.'s mother, Shannon Farrow ("Farrow"), testified that Harvey is the paternal grandmother of A.C.'s youngest sister. Farrow testified that A.C. spent time at Harvey's home while Farrow was working or for sleepovers with Harvey's other grandchildren. In August 2012, Farrow received a phone call from Brown. According to Farrow, Brown warned her that Garner had inappropriately touched D.T. while she was sleeping over at his home. Thereafter, Farrow asked each of her children if "they have ever been touched by anybody?" She clarified that she intentionally did not mention Garner's name when she questioned her children. Farrow testified that her children stated that they had never been touched inappropriately. Several weeks later, however, A.C. asked Farrow, "[i]f I tell you something, are you going to be mad?" When Farrow assured her that she would not be upset, A.C. stated that Garner "had been performing sexual acts on her and had her performing sexual acts on him." A.C. further told Farrow that Garner made her watch pornographic videos on his cell phone. Based on this information, Farrow went the police the following morning to fill out a report.

{¶ 9} A.C. (DOB 4–7–2003) was ten years old at the time of trial. She testified that Garner touched her when she was nine years old, in the summer of 2012. A.C. testified that on one occasion, Garner woke her up while she was sleeping and took her into the living room. Garner told A.C. to lay down on two couch cushions. Garner then pulled down A.C.'s underwear and touched her vagina with his tongue and fingers. In addition, A.C. testified that Garner made her touch and lick his "private areas." When asked how often this occurred, A.C. stated, "a lot." A.C. also testified that Garner "rubbed

her bottom," and she also recalled an incident where Garner "rubbed [her] vagina" with his "private part." According to A.C., "yellow stuff" came out of Garner's penis. A.C. testified that she did not tell her mother about Garner's conduct because he threatened to "chop her head off" if she told anyone.

{¶ 10} Harvey testified that she had no knowledge of the accusations made by D.T. and A.C. prior to Garner's arrest. Harvey stated that she did not believe Garner was capable of committing the offenses and that she would have noticed the sexual abuse had it occurred in her home. On cross-examination, Harvey testified that Garner was unable to perform sexually due to the side effects of his prescription medications.

{¶ 11} After resting its case, the state dismissed Counts 10, 22, 23, and 24.

{¶ 12} Garner testified on his own behalf and denied the allegations of sexual abuse made by D.T. and A.C. Garner testified that he never threatened, restrained, or inappropriately touched D.T. or A.C. Further, Garner maintained that many of the allegations raised against him were physically impossible given his medical conditions. Specifically, Garner testified that the side effects of his numerous medications prevent him from having an erection and that he has been unable to ejaculate since 2005.

{¶ 13} At the conclusion of trial, the jury found Garner guilty of all remaining counts and specifications. Subsequently, the trial court sentenced Garner to life without parole on the rape counts (Counts 1, 2, 5, 6, 13, 16, and 19); 25 years on the GSI counts (Counts 3, 7, 9, 11, 14, 17, and 20); life with the possibility of parole after 25 years on the kidnapping counts (Counts 4, 8, 15, 18, and 21); and 3 years for the intimidation count (Count 12). Counts 1 through 9 and 11–12, which related to A.C ., were ordered to run concurrently to each other, as were Counts 13–21, which related to D.T. However, the court ordered Counts 1–9 and 11–12 to run consecutively to Counts 13–21, "for an aggregate prison term of two life sentences (served consecutively) without parole."

*State v. Garner*, No. 102816, 2016-Ohio-2623, ¶¶ 3–13 (8th Dist. Ohio April 21, 2016).

## III.    Relevant State Procedural History

### A.    Indictment

Petitioner was initially indicted on December 19, 2012, but a second and third indictment followed on April 17, 2013 and August 28, 2013. *Id.* at ¶ 3, n.1. Each indictment included additional counts and was associated with a different case. *Id.* On October 21, 2013, the cases were consolidated, and Petitioner was indicted for:

> Count 1: Rape, R.C. 2907.02(A)(1)(b), felony of the first degree, with sexually violent predator specification (R.C. 2941.148(A));
>
> Count 2: Rape, R.C. 2907.02(A)(1)(b), felony of the first degree, with sexually violent predator specification (R.C. 2941.148(A));
>
> Count 3: Gross Sexual Imposition, R.C. 2907.05(A)(4) felony of the third degree, with sexually violent predator specification (R.C. 2941.148(A));
>
> Count 4: Kidnapping, R.C. 2905.01(A)(4), felony of the first degree, with sexual motivation specification (R.C. 2941.147(A)) and sexually violent predator specification (R.C. 2941.148(A));
>
> Count 5: Rape, R.C. 2907.02(A)(1)(b), felony of the first degree, with sexual motivation specification (R.C. 2941.147(A)) and sexually violent predator specification (R.C. 2941.148(A));
>
> Count 6: Rape, R.C. 2907.02(A)(1)(b), felony of the first degree, with sexual motivation specification (R.C. 2941.147(A)) and sexually violent predator specification (R.C. 2941.148(A));
>
> Count 7: Gross Sexual Imposition, R.C. 2907.05(A)(4), felony in the third degree, with sexually violent predator specification (R.C. 2941.148(A));
>
> Count 8: Kidnapping, R.C. 2905.01(A)(4), felony in the first degree, with sexual motivation specification (R.C. 2941.147(A)) and sexually violent predator specification (R.C. 2941.148(A));
>
> Count 9: Gross Sexual Imposition, R.C. 2907.05(A)(4), in the third degree, with sexually violent predator specification (R.C. 2941.148(A));
>
> Count 10: Gross Sexual Imposition, R.C. 2907.05(A)(4), in the third degree, with sexually violent predator specification (R.C. 2941.148(A));

Count 11: Gross Sexual Imposition, R.C. 2907.05(A)(4), in the third degree, with sexually violent predator specification (R.C. 2941.148(A));

Count 12: Intimidation of Crime Victim or Witness, R.C. 2921.04(B)(1), felony in the third degree;

Count 13: Rape, R.C. 2907.02(A)(1)(b), felony in the first degree, with sexually violent predator specification (R.C. 2941.148(A));

Count 14: Gross Sexual Imposition, R.C. 2907.05(A)(4), felony in the third degree, with sexually violent predator specification (R.C. 2941.148(A);

Count 15: Kidnapping, R.C. 2905.01(A)(4), felony in the first degree, with sexual motivation specification (R.C. 2941.147(A)) and sexually violent predator specification (R.C. 2941.148(A));

Count 16: Rape, R.C. 2907.02(A)(1)(b), felony in the first degree, with sexually violent predator specification (R.C. 2941.148(A));

Count 17: Gross Sexual Imposition, R.C. 2907.05(A)(4), felony in the third degree, with sexually violent predator specification (R.C. 2941.148(A));

Count 18: Kidnapping, R.C. 2905.01(A)(4), felony in the first degree, with sexual motivation specification (R.C. 2941.147(A)) and sexually violent predator specification (R.C. 2941.148(A));

Count 19: Rape, R.C. 2907.02(A)(1)(b), felony in the first degree, with sexually violent predator specification (R.C. 2941.148(A));

Count 20: Gross Sexual Imposition, R.C. 2907.05(A)(4), felony in the third degree, with sexually violent predator specification (R.C. 2941.148(A));

Count 21: Kidnapping, R.C. 2905.01(A)(4), felony in the first degree, R.C. 2905.01(A)(4), with sexual motivation specification (R.C. 2941.147(A)) and Sexually Violent Predator Specification (R.C. 2941.148(A);

Count 22: Rape, R.C. 2907.02(A)(1)(b), felony in the first degree, with sexually violent predator specification (R.C. 2941.148(A));

Count 23: Gross Sexual Imposition, R.C. 2907.05(A)(4), felony in the third degree, with sexually violent predator specification (R.C. 2941.148(A)); and

Count 24: Kidnapping, R.C. 2905.01(A)(4), felony in the first degree, with sexual motivation specification (R.C. 2941.147(A)) and sexually violent predator specification (R.C. 2941.148(A)).

*Id.*; (ECF No. 1-3, PageID #: 37–50). At arraignment, Petitioner pleaded not guilty to all charges. (ECF No. 1, PageID #: 1).

### B.      Trial and Guilty Verdict

The matter proceeded to a jury trial, where Petitioner was represented by counsel. At trial, the State dismissed Count 10 (Gross Sexual Imposition) with prejudice and Counts 22 (Rape), 23 (Gross Sexual Imposition), and 24 (Kidnapping) without prejudice. (ECF No. 4, PageID #: 59). The jury found Petitioner guilty of all other counts and specifications, and the trial court sentenced him to an aggregate prison term of two life sentences without parole. (ECF No. 1, PageID #: 1; ECF No. 4, PageID #: 59); *Garner*, 2016-Ohio-2623, at ¶ 11.

### C.  First Direct Appeal

Petitioner appealed his conviction and sentencing judgment to the Eighth District Court of Appeals on March 13, 2014. (ECF No. 4-1, PageID #: 124). He raised the following four assignments of error:

1.  Appellant was deprived of his constitutional right to a speedy trial when the trial court allowed the speedy trial issue to be overlooked and unresolved without specific and accurate calculation before the state of trial.

2.  Appellant was deprived of the effective assistance of counsel when his attorney failed to:
    1.  Object to the prosecution's submission of improper and prejudicial hearsay in the state's opening statement.
    2.  Object to prejudicial opinion testimony during the prosecution's examination of the detective.
    3.  Properly submit the telephone records and doctor's

7

report and failed to properly subpoena the doctor despite the reported "busy schedule."

    4.  Meet with and exchange information and potentially important evidence with Defendant's prior counsel.

3.  Appellant's conviction deprived him of due process because it was based on insufficient evidence and was against the manifest weight of the evidence.

4.  The trial court improperly sentenced Appellant contrary to law.

(ECF No. 4-1, PageID #: 131). The appellate court dismissed Petitioner's appeal for lack of jurisdiction since the trial court had not issued a final appealable order as several counts were dismissed without prejudice. (ECF No. 4-1, PageID #: 175). The appellate court remanded the case back to the trial court which then dismissed the three counts with prejudice upon the parties' agreement. (ECF No. 4-1, PageID #: 177–78).

### D. Second Direct Appeal

Petitioner then filed his second direct appeal on April 1, 2015. (ECF No. 4-1, PageID #: 180). He raised four assignments of error:

1.  The trial court erred when it allowed Mr. Garner's case to proceed to trial in violation of Mr. Garner's right to a speedy trial under R.C. 2945.71.

2.  Mr. Garner was deprived of effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

3.  Mr. Garner was denied due process of law because his conviction was based on insufficient evidence and was against the manifest weight of the evidence.

4.  The trial court erred by improperly sentencing Mr. Garner pursuant to the sentencing ranges put on the record when a potential plea agreement was discussed.

(ECF No. 4-1, PageID #: 191; *see also* ECF No. 1-2, PageID #: 17). The appellate court affirmed in part, reversed in part, and remanded the case back to the trial court. *Garner*, 2016-Ohio-2623,

at ¶ 2. The court overruled Petitioner's first three assignments of error but sustained his fourth assignment of error since the trial's court's decision to sentence him to twenty-five years for each gross sexual imposition (GSI) count was contrary to R.C. 2971.03(A)(3)(a). *Id.* at ¶¶ 59–66. The statute requires that the trial court impose "an *indefinite* prison term consisting of a minimum term fixed by the court from among the range of terms available as a definite term for the offense, but not less than two years, and a maximum term of life imprisonment." R.C. 2971.03(A)(3)(a) (emphasis added). As the trial court sentenced Petitioner to definite terms of twenty-five years on each GSI count, the appellate court sustained Petitioner's fourth assignment of error, vacated the original sentences, and remanded the case for resentencing in accordance with R.C. 2971.03. *Garner*, 2016-Ohio-2623, at ¶¶ 63–66.

**E.    Ohio Supreme Court Appeal**

Shortly after the second remand, Petitioner filed a notice of appeal with the Ohio Supreme Court on June 6, 2016. (ECF No. 4-1, PageID #: 318–19). He raised the following propositions of law:

1.    The trial court erred when it allowed my case to proceed to trial in violation of my right to a speedy trial under R.C. 2945.71.

2.    I was deprived of effective assistance of counsel as guaranteed by the Sixth Amendment to the United State Constitution and Article 1, Section 10 of the Ohio Constitution.

3.    I was denied due process of law because my conviction was based on insufficient evidence and was against the manifest weight of the evidence.

4.    The trial court erred by improperly sentencing me pursuant to the sentencing ranges put on record when a potential plea agreement was discussed.

(ECF No. 4-1, PageID #: 329). On September 14, 2016, the Ohio Supreme Court declined to accept jurisdiction of Petitioner's appeal. (ECF No. 4-1, PageID #: 373); *see also State v. Garner*, 146 Ohio St. 3d 1504 (2016) ("*Garner II*").

### F.    Appeal of Second Remand and Resentencing

On December 21, 2016, the trial court resentenced Petitioner to five years to life on each of GSI count (Counts 3, 7, 9, 11, 17, and 20). (ECF No. 4-1, PageID #: 374). Petitioner then appealed his resentencing, raising the following assignment of error: "The trial court erred by sentencing the defendant-appellant to a term of imprisonment contrary to statute and where its findings were not supported by the record." (ECF No. 4-1, PageID #: 375, 382).

The appellate court found that the trial court "failed to conduct a full and proper resentencing hearing with appropriate consideration of the relevant statutory sentencing authority." *State v. Garner*, No. 105387, 2017-Ohio-8405, at *2 (2017) ("*Garner III*"). Specifically, the appellate court found that the trial court should have considered the sentencing factors under R.C. 2929.11 and 2929.12 in resentencing. *Id.* Thus, the court remanded the case on November 2, 2017 to the trial court for resentencing including a "single cohesive sentencing entry encompassing all charges for which [Petitioner] was convicted." *Id.*

### G.    Appeal of Third Remand and Resentencing

Following the November 2, 2017 ruling, the trial court resentenced Petitioner. The trial court imposed life sentences with the possibility of parole on the GSI counts, and two GSI counts were made consecutive to each other but concurrent with the life sentences imposed for the rape counts. (ECF No. 4-1, PageID #: 405–06). The remaining GSI counts were concurrent with all other counts. (ECF No. 4-1, PageID #: 405–06). The remaining sentences were upheld, and the

court ordered Petitioner to serve an aggregate term of two consecutive life sentences without parole. (ECF No. 4-1, PageID #: 405–06).

Petitioner filed his third direct appeal on March 13, 2018, challenging the trial court's latest resentencing. (ECF No. 4-1, PageID #: 407). He argued one assignment of error: "The trial court erred by ordering Appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14 and HB 86." (ECF No. 4-1, PageID #: 419). On January 24, 2019, the appellate court remanded the case for the trial court to issue a nunc pro tunc entry to codify all findings under R.C. 2929.14(C)(4). *State v. Garner*, No. 106933, 2019-Ohio-250, at *3 (2019) ("*Garner IV*"). On March 18, 2019, the trial court issued a nunc pro tunc entry in accordance with the third remand. (ECF No. 4-1, PageID #: 490–92).

### H.     Motion to Vacate Jury's Verdicts and Dismiss his Indictment

Petitioner then filed a motion to vacate the jury's verdicts and to dismiss his indictment with prejudice on February 16, 2018. (ECF No. 4-1, PageID #: 449). The court denied Petitioner's motion. (ECF No. 4-1, PageID #: 489).

## IV.     Federal Habeas Corpus Petition

Petitioner petitioned pro se that this Court issue a writ of habeas corpus on October 21, 2019. (ECF No. 1). Petitioner asserted the following grounds for relief:

> **Ground One:** Petitioner's right to a speedy trial was violated due to the delay from the time he was arrested until he was brought to trial, and the judgment of the State court on the merits of this claim, resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
>
> *
>
> **Ground Two:** Petitioner was denied the effective assistance of counsel in violation of his constitutional rights under the Sixth and

Fourteenth Amendments to the United States Constitution, and the judgment of the State court on the merits of this claim, resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 90 L.Ed.2d 674.

\*

**Ground Three:** Petitioner's convictions were based on insufficient evidence and the judgment of the State court on the merits of this claim, resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 781, 61 L.Ed.2d 560 (1979).

(ECF No. 1-2, PageID #: 17–19).

## V.      Legal Standards

### A.      Timeliness of Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year period of limitations for state prisoners to file their federal habeas corpus petitions. *Wall v. Kholi*, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1)); *Sexton v. Wainwright*, 968 F.3d 607, 609–10 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1064 (2021). There is no dispute that Petitioner timely filed his federal habeas corpus petition within the 28 U.S.C. §2244(d) 1-year statute of limitations. (ECF No. 4, PageID #: 63).

### B.      Jurisdiction

Title 28 U.S.C. § 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Cuyahoga

12

County sentenced Petitioner, and Cuyahoga County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

### C. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

### D. Exhaustion

"A federal habeas corpus court should not grant a habeas corpus application by a state prisoner unless he has exhausted all of his available state court remedies on his grounds for relief. 28 U.S.C. § 2254(b) and (c)." *Gordon v. Bradshaw*, No. 104 CV 2299, 2007 WL 496367, at *12 (N.D. Ohio Feb. 12, 2007). "A petitioner satisfies the exhaustion requirement once the state supreme court provides him with an opportunity to review his claims on the merits and the state supreme court has had a full and fair opportunity to rule on the claims." *Id.* (citing *Dickerson v.*

*Mitchell*, 336 F. Supp. 2d 770, 786 (N.D. Ohio 2004) (citing *O'Sullivan*, 526 U.S. 838; *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990))). "If a remedy remains under state law that a federal habeas corpus petitioner has not yet pursued, exhaustion has not occurred and the federal habeas court cannot review the merits of the claim." *Id*. (citing *Rust*, 17 F.3d at 160). "When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted." *Adams v. Burton*, No. 16-1476, 2016 WL 6610219, at *2 (6th Cir. Nov. 8, 2016) (citing *O'Sullivan*, 526 U.S. at 848). There is no dispute that Petitioner properly exhausted his federal constitutional claims as 28 U.S.C. § 2254(b)(1)(A) requires.

### E.  Procedural Default

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84–87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id*. at 732–33. To be

14

adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . . it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

15

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id*. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) ("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

## F.    AEDPA Standard of Review

Title 28 U.S.C. § 2254, as amended by the AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal

claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id*.

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528

(2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## VI.     Discussion

### A.      Ground One – Speedy Trial

In Ground One, Petitioner argues that his right to speedy trial was violated under *Barker v. Wingo*, 407 U.S. 514 (1972), as the State incorrectly applied Ohio R.C. 2945.71(E) to count his delay. (ECF No. 1-2, PageID #: 17). Respondent first contends the claim is not cognizable as Petitioner is raising a state law issue by arguing the state appellate court did not correctly apply

R.C. 2945.71(E). (ECF No. 4, PageID #: 64–65). Second, Respondent contends that Petitioner failed to raise his federal right to a speedy trial in his direct appeal and thus waived his claim and cannot bring it in habeas. (ECF No. 4, PageID #: 67). Petitioner argues in his Traverse that the Ohio and federal constitutions are intrinsically linked and claims that by asserting his speedy trial rights under the Ohio state constitution, he simultaneously asserted his federal constitutional right in his direct appeals. (ECF No. 6, PageID #: 1228–29).

The Court will not address Respondent's argument about whether Ground One is cognizable; regardless of whether the claim is cognizable, it was procedurally defaulted and must be dismissed. As stated above, a petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston*, 282 F. Supp. 2d at 661 ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). In Petitioner's direct appeal to the Ohio Court of Appeals, he failed to raise his federal right to a speedy trial under *Barker*. (ECF No. 4-1, PageID #: 215–16). Thus, he forfeited his right to raise this issue in habeas for the first time.

Petitioner has also failed to overcome procedural default by demonstrating cause, actual prejudice, or a "fundamental miscarriage of justice" if the Court did not consider this claim. *See Coleman*, 501 U.S. at 750. Indeed, he has not attempted to show any of these exceptions in his briefing. Thus, the Court dismisses Ground One for procedural default. In the interest of judicial economy, the Court will not address the merits of the claim.

### B.  Ground Two – Ineffective Assistance of Counsel

In Ground Two, Petitioner argues that his trial counsel was ineffective for four reasons. He claims his trial counsel should have objected to the State's reference to an alleged victim in its opening statement and a trial witness's use of the term "victim" in his testimony. (ECF No. 1-2, PageID #: 19). He also argues that his trial counsel failed to properly preserve, submit, and disclose favorable evidence at trial. (ECF No. 1-2, PageID #: 19). Finally, Petitioner claims his counsel was ineffective because she failed to meet with his prior counsel until the morning before trial. (ECF No. 1-2, PageID #: 19). Respondent argues that Ground Two is meritless and that for each claim, Petitioner cannot show either deficient performance or prejudice, as is required by *Strickland v. Washington*, 466 U.S. 668 (1984). (ECF No. 4, PageID #: 92).

The state court of appeals examined each of these claims on direct appeal. *Garner*, 2016-Ohio-2623, at *6. The court's adjudication appropriately cited *Strickland* for all these habeas claims, stating:

> A reviewing court may not reverse a conviction for ineffective assistance of counsel unless the defendant shows first that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's error, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus. A "reasonable probability" in this context is one that undermines confidence in the outcome. *See State v. Sanders*, 92 Ohio St.3d 245, 274, 750 N.E.2d 90 (2001).

*Garner*, 2016-Ohio-2623, at ¶ 32 (citing *Strickland*, 466 U.S. at 687). The court ultimately found Petitioner's claims meritless. *Id.* at ¶ 44. It held that Petitioner's attorney was not deficient for failing to object during opening statement and meeting with his prior counsel that day of trial. *Id.* at ¶¶ 35, 43. Further, the court found that Petitioner failed to establish any prejudice from his

20

counsel's failure to object to a witness's use of the term "victim" and preservation of evidence. *Id.* at ¶¶ 38, 41.

When a state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d). *Perkins v. McKee*, 411 F. App'x 822, 828 (6th Cir. 2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. Also, in *Harrington*, the Supreme Court emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Perkins*, 411 F. App'x. at 828 (quoting *Harrington*, 562 U.S. at 101–06).

### i. Failure to object in opening statement

Petitioner first asserts that he was denied effective assistance of counsel because his counsel failed to object to the State's reference to a third alleged victim in its opening statement. (ECF No. 1-2, PageID #: 19). The charges related to the alleged victim were later dismissed. (ECF

21

No. 4, PageID #: 85). Respondent argues that defense counsel's failure to object was not deficient because there would have been no basis to object as opening statements simply state what a party expects the evidence will show. (ECF No. 4, PageID #: 85). Additionally, Respondent claims an objection would have been unsuccessful because the counts had not yet been dismissed during the State's opening statement. (ECF No. 4, PageID #: 85). Respondent finally argues that Petitioner fails to demonstrate any prejudice from defense counsel's actions. (ECF No. 4, PageID #: 85). In his Traverse, Petitioner argues that his counsel's failure to object prejudiced him before the jury because the State wielded an unsupported allegation against him. (ECF No. 6, PageID #: 1232).

The state appellate court reviewed this assertion of error on the merits and found it did not constitute ineffective assistance of counsel:

> {¶ 33} Garner initially contends "trial counsel was ineffective for failing to object to the state's use of allegations from D.G. during its opening statement."

> {¶ 34} "Generally, prosecutors are entitled to considerable latitude in opening and closing arguments." *State v. Whitfield,* 2d Dist. Montgomery No. 22432, 2009–Ohio–293, ¶ 12. Moreover, an opening statement is not evidence but is intended to advise the jury of what counsel expects the evidence to show. *State v. Turner,* 91 Ohio App.3d 153, 631 N.E.2d 1117 (1st Dist.1993). As such, the prosecutor and defense counsel may, in good faith, make statements as to what they expect the evidence will show. *Id.*

> {¶ 35} In this case, the prosecutor stated during its opening statement that it intended to prove that Garner inappropriately touched the minor victim D.G. At the time the statement was given, the prosecutor had a good faith belief that D.G. would be testifying at trial. Therefore, while the charges corresponding to D.G. were ultimately dismissed because she did not testify at trial, defense counsel did not have a legal basis to object to the prosecution's reference to D.G. during its opening statement. Accordingly, we find defense counsel was not deficient for failing to object to the challenged portion of the prosecutor's opening statement.

*Garner*, 2016-Ohio-2623, at ¶¶ 33–35.

Petitioner does not argue how the above-quoted state appellate court's determination was contrary to or an unreasonable application of *Strickland*. Moreover, because the state court adjudicated his ineffective assistance of counsel claim on the merits, there is a double layer of deference applicable to the court's review of an ineffective assistance of counsel claim. *Harrington*, 562 U.S. at 105–06. Here, Petitioner has failed to overcome the double and highly deferential standard applicable to the Court's review of his *Strickland* claims. He has not shown that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington*, 562 U.S. at 101–04). In fact, this Court's review indicates that the factual review of the state court of appeals was supported by the record and its legal analysis followed the dictates of *Strickland*. Accordingly, this first instance of ineffective assistance of counsel should be dismissed as meritless.

### ii. Failure to object to a witness's use of the term "victim"

Petitioner next claims that defense counsel's failure to object to Detective Jack Lentz's characterization of the complaining witnesses as "victims" during his trial testimony was deficient. (ECF No. 1-2, PageID #: 19). Respondent argues that Petitioner cannot show that an objection to this term would have changed the outcome of the trial. (ECF No. 4, PageID #: 87). In his Traverse, Petitioner argues that the detective's use of the term prejudiced him by minimizing his presumption of innocence and that the trial result would have been different if defense counsel had objected. (ECF No. 6, PageID #: 1233–34).

The court reviewed Petitioner's argument and found that defense counsel's failure to object was not deficient:

> {¶ 36} Garner contends trial counsel was "ineffective for failing to object to Detective Jack Lent's ('Det.Lent') characterization of the accusers as 'victims.'"
>
> {¶ 37} At trial, Det. Lent was questioned at length about his investigation into the allegations raised against Garner. In the course of his testimony, Det. Lent often referred to D.T. and A.C. as "victims." Garner contends that referring to an accuser as a "victim" has the effect of instructing the jury that the crime did occur, "thereby depriving a defendant the presumption of innocence."
>
> {¶ 38} While we recognize the concerns raised by Garner, we are unable to conclude that there is a reasonable probability the result of the trial would have been different had defense counsel objected to Det. Lent's reference to D.T. and A.C. as victims. Accordingly, Garner cannot establish the requisite level of prejudice necessary for his ineffective assistance of counsel claim.

*Garner*, 2016-Ohio-2623, at ¶¶ 36–38.

This Court finds that the state court correctly applied *Strickland* to this claim and provided a reasonable explanation for dismissing it. Indeed, it is difficult to see how counsel's failure to object could lead to any catastrophic consequences, especially as Detective Lent was only one of several witnesses to testify, and Petitioner fails to explain the prejudice he faced as a result of his attorney's decision. To grant a habeas claim, the Court must find that trial counsel's decision amounted to an error with serious consequences affecting the outcome of the case *and* that the state court was highly unreasonable in its review of the issue. The Court finds that neither is the case, and another court in this district has made a similar finding on a habeas matter. *See United States v. Willoughby*, 144 F. Supp. 3d 935, 942 (N.D. Ohio 2015) (rejecting habeas petitioner's § 2255 ineffective assistance of counsel claim related to trial counsel's failure to object to the government's repeated use of the term "victim" in reference to the complaining witness and "pimp" in reference to the petitioner). Thus, this claim is meritless, and the Court dismisses it.

### iii.  Failure to properly preserve, submit, and disclose evidence to the State of Ohio

24

Petitioner next argues that counsel "failed to properly preserve, submit, and disclose evidence favorable to Petitioner at trial." (ECF No. 1-2, PageID #: 19). Although he does not explain it in his petition, based on his previous direct appeal, Petitioner appears to refer to his trial counsel's failure to subpoena his treating physician to testify about his erectile disfunction, and other medical conditions, which he claimed would have precluded him from committing the offenses. *See Garner*, 2016-Ohio-2623, at ¶¶ 39–41. Respondent contends that Petitioner has failed to establish that he was prejudiced by this claim and points to other witnesses who testified about the erectile condition (Petitioner and Linda Harvey). (ECF No. 4, PageID #: 89). Further, Respondent argues that the victims never testified to anything that was contrary to Petitioner's alleged medical condition and that the state appellate court did not err in rejecting the claim. (ECF No. 4, PageID #: 90). In his Traverse, Petitioner argues the physician was "critical to the defense" and that her testimony would have impacted the outcome of the case. (ECF No. 6, PageID #: 1235). He also mentions that records the physicians could have introduced would have strengthened his case. (ECF No. 6, PageID #: 1235).

The state court reviewed the assignment of error and found that Petitioner had not proved that circumstances would have been different if the testimony had been brought to trial:

> {¶ 39} Garner further contends that counsel was ineffective for failing to subpoena his treating physician, Dr. Carrie Basset ("Dr. Basset"), to testify as a medical expert. Garner argues that Dr. Basset, "would have offered testimony rebutting the allegations against him; namely, that he could not have committed some of the offenses due to his medical conditions and treating medications."
>
> {¶ 40} After careful review of the record, it is apparent that the trial court was not satisfied with defense counsel's repeated attempts to introduce certain medical records into evidence without producing Dr. Basset as a witness at trial. As referenced by the trial court, counsel's conduct did not comport with the most basic rules of

criminal discovery, and her failure to request a continuance to produce Dr. Basset was "concerning."

{¶ 41} However, we are unable to conclude that Garner was prejudiced by defense counsel's failure to subpoena Dr. Basset. At trial, Garner and Harvey each testified about Garner's various medical conditions and his physical limitations that purportedly would have prevented him from engaging in the alleged sexual conduct. Thus, the jury, as the trier of fact, was presented with the relevant medical information supporting Garner's defense. Furthermore, we note that any testimony from Dr. Basset concerning Garner's erectile dysfunction would have been irrelevant to the majority of Garner's convictions which involved acts of cunnilingus, touching, rubbing, and digital penetration. For these reasons, we cannot say the outcome of the trial would have been different had Dr. Basset testified at trial.

*Garner*, 2016-Ohio-2623, at ¶¶ 39–41.

As mentioned above, Petitioner failed to adequately explain this claim in his petition and has thus waived his argument on this matter.[2] However, even if Petitioner had properly explained the claim in his petition, he would still have to explain why his rights under *Strickland* were violated and how the state appellate court made a highly unreasonable finding related to this claim. As Petitioner has failed to do so, his claim is dismissed as meritless.

### iv.   Failure to meet with prior counsel before the morning of trial

Petitioner finally argues that defense counsel was ineffective by failing to meet with Petitioner's prior counsel and exchange evidence until the morning of trial. (ECF No. 1-2, PageID #: 19). Respondent contends that the attorney's failure to meet with prior counsel did not impair her defense, and the evidence she acquired during the meeting was "not necessary" for Petitioner's

---

[2] The Sixth Circuit has repeatedly held that the failure to raise an argument in the initial brief waives the issue. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held, however, that arguments made to us for the first time in a reply brief are waived.") (citing *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004)); *see also Braun v. Comm's of Soc. Sec.*, 2021 WL 8016061, at *12 (N.D. Ohio Apr. 7, 2021) ("It is well established that arguments made for the first time in a reply brief are waived.").

case. (ECF No. 4, PageID #: 91). Even if counsel's decisions were deficient, Respondent argues that Petitioner cannot demonstrate prejudice. (ECF No. 4, PageID #: 92). Petitioner argues in his Traverse that his counsel refused to accept a file from the prior attorney and that Petitioner was prejudiced by his counsel's inability to obtain this file earlier. (ECF No. 6, PageID #: 1236).

The state appellate court reviewed Petitioner's claim on direct appeal. The court rejected the claim for the following reasons:

> {¶ 42} Finally, Garner claims that counsel failed to act with "reasonable diligence and promptness" when preparing for trial. Garner argues that defense counsel failed to meet with his prior counsel until the morning of trial and, therefore, did not have adequate time to prepare a sufficient defense.
>
> {¶ 43} Despite Garner's position to the contrary, our review of the record reflects that defense counsel's preparations for trial began well before the morning of trial. Although defense counsel admitted that she was unable to meet with Garner's prior counsel until the day of trial, the parties' on-the-record discussion with the trial court demonstrates that defense counsel's inability to meet with prior counsel at an earlier time had no impact on her preparation of the case or her ability to proceed with the trial as scheduled. While Garner continues to challenge defense counsel's tactical decision to proceed with trial without subpoenaing Dr. Basset, we find nothing in the record to suggest counsel was ineffective for failing to meet with prior counsel before the morning of trial.

*Garner*, 2016-Ohio-2623, at ¶¶ 42–43.

Similar to his other ineffective assistance of counsel claims, Petitioner has not fully briefed this issue in his petition. Thus, he has not adequately explained in his petition how his counsel erred and prejudiced his case. Petitioner has also failed to explain how the state appellate court's review of this issue was unreasonable. Without more information, this Court cannot find his trial counsel's decision either deficient or prejudicial. Likewise, this Court finds that the state court correctly applied *Strickland* and did not unreasonably dismiss Petitioner's claim. This claim is dismissed.

## C. Ground Three – Insufficient Evidence

In Ground Three, Petitioner argues there was insufficient evidence to convict him of Counts 1 through 18 against A.C. and D.T. (ECF No. 1-2, PageID #: 19). He specifically attacks the time frames of each offense. He claims A.C. testified she did not visit Petitioner's house after Easter 2012, even though the indictment alleged he abused her on or about July 1 through August 31, 2012. (ECF No. 1-2, PageID #: 19). Petitioner also claims that there was no evidence he committed acts against D.T. in 2010, although Counts 13, 14, and 15 alleged acts on or about September 1 through December 31, 2010. (ECF No. 1-2, PageID #: 19). Respondent argues these claims are not cognizable in federal habeas corpus and are meritless because an indictment's dates need not be exact in child sexual abuse cases. (ECF No. 4, PageID #: 93–94). In Petitioner's Traverse, he also claims D.T. testified that she did not remember any abuse in 2011 and that the state appellate court's decision was contrary to law. (ECF No. 6, PageID #: 1237).

Petitioner made the same arguments on direct appeal. The state appellate court reviewed and rejected Petitioner's assignment of error for the following reasons:

> {¶ 45} In his third assignment of error, Garner argues his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.
>
> {¶ 46} Although the terms "sufficiency" and "weight" of the evidence are "quantitatively and qualitatively different," we address these issues together because they are closely related, while applying the distinct standards of review to Garner's arguments. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).
>
> {¶ 47} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009–Ohio–3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 48} In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence." *Thompkins* at 387, 678 N.E.2d 541. While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007–Ohio–2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386–387, 678 N.E.2d 541. "In other words, a reviewing court asks whose evidence is more persuasive— the state's or the defendant's?" *Id.* The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 49} We are mindful that the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986).

{¶ 50} In challenging the sufficiency of the evidence supporting his convictions, Garner argues the state failed to prove he committed the offenses during the time frame specified in his indictment. Relevant to the arguments raised by Garner, Counts 1 through 12 of the indictment alleged that the sexual conduct or sexual contact with A.C. occurred between July 1, 2012, and August 31, 2012. Counts 13 through 21 of the indictment alleged that the sexual conduct or sexual contact with D.T. occurred between September 1, 2010, and June 30, 2012.

{¶ 51} This court has held that "specificity as to the time and date of an offense is not required in an indictment." *State v. Bogan*, 8th Dist. Cuyahoga No. 84468, 2005–Ohio–3412, ¶ 10, citing *State v. Shafer*, 8th Dist. Cuyahoga No. 79758, 2002–Ohio–6632.

{¶ 52} This is especially the case where the victim is a child victim of sexual assault, as were the victims in this case:

"[W]here such crimes constitute sexual offenses against children, indictments need not state with specificity the dates of alleged abuse, so long as the prosecution establishes that the offense was committed within the time frame alleged." *State v. Barnecut*, 44 Ohio App.3d 149, 152, 542 N.E.2d 353 (1988); *see also State v. Gus*, 8th Dist. Cuyahoga No. 85591, 2005–Ohio–6717. This is partly due to the fact that the specific date and time of the offense are not elements of the crimes charged. *Gus*, at ¶ 6. Moreover, many child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time. *State v. Mundy*, 99 Ohio App.3d 275, 296, 650 N.E.2d 502 (1994). "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse." *State v. Robinette*, 5th Dist. Morrow No. CA–652, 1987 Ohio App. LEXIS 5996, *8, 1987 WL 7153 (Feb. 27, 1987). *State v. Yaacov*, 8th Dist. Cuyahoga No. 86674, 2006–Ohio–5321, ¶ 17. Thus, when dealing with the memory of a child, reasonable allowances for inexact dates and times must be made. *Id. See also State v. Ibrahim*, 8th Dist. Cuyahoga No. 102114, 2015–Ohio–3345, ¶ 32.

{¶ 53} In this case, D.T. and A.C. provided detailed accounts of the sexual abuse that occurred while they spent time at Garner's house. Specifically, D.T. testified that Garner touched her chest and vagina with his fingers and digitally penetrated her vagina with his fingers on approximately one to five occasions. D.T. testified that the sexual abuse took place when she slept over at Garner's home. Although D.T. could not remember when the sexual abuse started, she testified that Garner touched her while she was in the third and fourth grade, which covered the school years 2011–2012 and 2012–2013.

{¶ 54} Similarly, A.C. testified that when she was nine years old Garner rubbed her buttocks and touched her vagina with his tongue and fingers. Further, A.C. testified that Garner made her touch and lick his "private areas." She also recalled an incident where Garner "rubbed [her] vagina" with his private part. Finally, A.C. testified that Garner threatened to "chop her head off" if she told someone. A.C. testified that these events took place during her summer break from school when she was nine years old, which encompassed the summer of 2012.

{¶ 55} Viewing the evidence in a light most favorable to the prosecution, we find a rational trier of fact could have found the

essential elements of the crimes proven beyond a reasonable doubt. While the minor victims were unable to provide specific dates, the prosecution established that the offenses were committed within the time frame alleged in the indictment. The inexactness in time does not render the evidence insufficient to support Garner's convictions. Furthermore, the inexactness was not detrimental to Garner's defense because he maintained at trial that the sexual abuse never occurred. *See State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985). Accordingly, we find Garner's convictions were supported by sufficient evidence.

*Garner*, 2016-Ohio-2623, ¶¶ 45–55.

The state court of appeals relied on state law, rather than federal law, in addressing the sufficiency of the evidence claim. The state court, however, relied on *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) (syllabus), which follows the sufficiency of evidence standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). Thus, the issue is whether the state court decision was an unreasonable application of clearly established federal law; in other words, whether the state court identified the correct governing legal principle from Supreme Court decisions, but unreasonably applied that principle to the facts of Allen's case. *Williams*, 529 U.S. at 410–12; *Bolton v. Harris*, No. 1:18CV1164, 2021 WL 1930239, at \*31 (N.D. Ohio Apr. 7, 2021), *report and recommendation adopted*, No. 1:18 CV 1164, 2021 WL 1929117 (N.D. Ohio May 13, 2021).

Under *Jackson*, a sufficiency of the evidence claim is reviewed by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. at 319; *see also Cavazos v. Smith*, 565 U.S. 1, 7 (2011); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990). The state court correctly identified and applied the governing legal principle as set forth in *Jackson*. *See Garner*, 2016-Ohio-2623, ¶¶ 45–55.

On habeas review, "the *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly

insurmountable hurdle.'" *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (en banc), *cert. denied*, 566 U.S. 947 (2012) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). The Supreme Court has affirmed that "*Jackson* claims face a high bar in federal habeas proceedings." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). A federal habeas court may overturn the state court's sufficiency of the evidence decision "only if the state court decision was 'objectively unreasonable.'" *Id*. (citing *Cavazos*, 565 U.S. at 4).

A sufficiency of the evidence claim "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir.), cert. denied, 537 U.S. 980 (2002) (quoting *Jackson*, 443 U.S. at 324 n.16). Thus, the federal court must look to state law to determine the elements of the crime. *See Palmer v. Palmer*, No. 1:15-CV-458, 2018 WL 7891722, at *15 (W.D. Mich. Oct. 29, 2018), *report and recommendation adopted*, No. 1:15-CV-458, 2019 WL 1429258 (W.D. Mich. Mar. 29, 2019) (citing *Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").

As the state court of appeals discussed in its opinion, it is well-established that indictments need not allege the exact date of an offense. *See State v. Sellards*, 17 Ohio St. 3d 169, 171 (1985) ("Ordinarily, precise times and dates are not essential elements of offenses. Thus, the failure to provide dates and times in an indictment will not alone provide a basis for dismissal of the charges."). This is especially true regarding child sexual abuse as victims may not remember the

32

specific dates of an alleged offense. *State v. Yaacov*, No. 86674, 2006-Ohio-5321, ¶ 17 (8th Dist. Ohio Oct. 12, 2006); *State v. Luks*, No. 89869, 2008-Ohio-3974, ¶ 13 (8th Dist. Ohio Aug. 7, 2008) ("[Y]oung children may not be able to remember exact dates, especially when the crimes involve several instances of abuse spread out over an extended period of time."); *State v. Scott*, Nos. CA2019-07-051, CA2019-07-052, 2020-Ohio-3230, ¶ 40 (12th Dist. Ohio June 8, 2020) ("In sexual abuse cases involving children, this court has held that it may be impossible to provide a specific date in the indictment."). For practical purposes, the government may adopt a time frame during which the alleged offense occurred in lieu of specific offense dates. *State v. Birt*, No. CA2012–02–031, 2013-Ohio-1279, ¶ 32 (12th Dist. Ohio Apr. 8, 2013) ("An allowance for reasonableness and inexactitude must be made for such [child sexual abuse] cases" where the abuser and victim spent extended periods of time together); *see also State v. Collinsworth*, No. CA2003–10–012, 2004-Ohio-5902, ¶ 23 (12th Dist. Ohio Nov. 8, 2004) ("Under circumstances dealing with the memory of a child, reasonable allowances for inexact dates and times must be made.").

Petitioner argues that there was insufficient evidence to convict him of Counts 1 through 18 for rape, gross sexual imposition, kidnapping, and intimidation of a crime victim or witness. To be guilty of rape under Ohio R.C. 2907.02(A)(1)(b), the offender must "engage in sexual conduct with another who . . . is less than thirteen years of age, whether or not the offender knows the age of the other person." To be guilty of gross sexual imposition under Ohio R.C. 2907.05(A)(4) the offender must "have [or cause] sexual contact with another [who] is less than thirteen years of age, whether or not the offender knows the age of that person." To be guilty of kidnapping under Ohio R.C. 2905.01(A)(4), the offender must "remove another from the place where the other person is found or restrain the liberty of the other person . . . [t]o engage in sexual activity, as defined

in section 2907.01 of the Revised Code, with the victim against the victim's will." To be guilty of intimidation of a crime victim under Ohio R.C. 2921.04(B)(1), an offender must "knowingly and by force or by unlawful threat of harm to any person or property . . . attempt to influence, intimidate, or hinder [a] victim of a crime." Here, the state court's opinion, quoted above, recounts the evidence that supports convictions on the elements of rape, gross sexual imposition, kidnapping, and intimidation. *Garner*, 2016-Ohio-2623, ¶¶ 53–54.

Reviewing the state appellate court's determination on these issues, this Court does not find that the decision is an objectively unreasonable application of federal law. The court reviewed the evidence supporting the convictions, including A.C.'s and D.T.'s "detailed accounts" of sexual abuse when they were under the age of thirteen as well as the circumstances and general timeframe of the abuse. *Id.* The court also discussed the specificity of dates on Petitioner's indictment and held that the "inexactness of time does not render the evidence insufficient to support Garner's convictions," in accordance with Ohio case law. *Id.* at ¶¶ 52, 55.

While the state appellate court could have provided additional analysis of Counts 13 through 15, and how a reasonable juror could have pieced together the evidence at trial to convict for 2010 offenses, this Court finds that it appropriately applied *Jackson*. Furthermore, to succeed on a habeas claim, Petitioner must also show that the trial court denied him rights under *Jackson*. This Court finds that a reasonable juror could have found Petitioner guilty of the 2010 offenses. Although D.T. testified that the abuse occurred during her third and fourth grade school years (2011–12 and 2012–13), she also testified that she did not remember when it began. (ECF No. 4-2, PageID #: 771, 775). It would not be unreasonable for a juror to believe beyond a reasonable doubt that Petitioner abused D.T. in 2010 since she testified that the abuse occurred every time she visited Petitioner's home, and she knew Petitioner since age seven in 2009. (ECF No. 4-2, PageID

#: 771, 774). As previously discussed, the date in an indictment need not identify that exact date of an offense, especially in child abuse cases. *See State v. Birt*, 2013-Ohio-1279, at ¶ 32. Thus, looking at the evidence in a light most favorable to the prosecution, it would not be unreasonable for a juror to find Petitioner guilty of Counts 13 through15.

The Court finally notes that Petitioner's argument about A.C. is based on incorrect information. Petitioner claimed he was convicted of offenses in July through August 2012 against A.C. even though she testified that she stopped visiting his house after Easter 2012. (ECF No. 1-2, PageID #: 19). This is false. As Respondent mentions in its brief, A.C. testified that she continued visiting Petitioner's house after Easter 2012 and into the summer of 2012. (ECF No. 4-2, PageID #: 933). This testimony demonstrates that A.C. continued visiting Petitioner later in the year and undermines his argument that he could not have committed offenses against her in July through August 2012. Accordingly, the Court agrees that Petitioner's convictions are supported by sufficient evidence, and Ground Three should be dismissed as meritless.

## VII.    Certificate of Appealability

### A.      Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require

a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

**B.     Analysis**

Petitioner's grounds for relief are procedurally defaulted and meritless. If the Court accepts the foregoing recommendation, then Petitioner has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

**VIII.   Recommendation**

Petitioner has presented only procedurally defaulted and meritless claims. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

DATED: December 14, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).